HARRIS, Judge.
B.N. Enterprises, a floorplan lender to independent motor vehicle dealers in the auto auction industry, sued Anthony Robert La-Vornia for monies owed on a promissory note and for other monies owed B.N. Enterprises for overdue floorplan financing loans made to LaVomia on an open account. LaVornia responded with a counterclaim against B.N. Enterprises and a third-party complaint against individuals, including Jeanelle Rivers, who were allegedly associated with B.N. Enterprises. In its third-party complaint, La-Vornia alleged that Rivers and another individual, James Moran, violated the federal RICO act (Count II), and Florida’s Civil Remedies for Criminal Practices Act (Count III).
The allegations against Rivers and Moran as set forth in Count II, which allows for a civil recovery, are identical to those in Count III:
*289 59. In violation of section 772.103(1), Florida Statutes, RIVERS and MORAN have with criminal intent received proceeds, directly or indirectly, from a pattern of criminal activity and through the collection of unlawful debts used or invested, whether directly or indirectly, said proceeds in the acquisition, establishment or operation of B.N. and the AUCTION.
60. In violation of section 772.103(2), Florida Statutes, RIVERS and MORAN have through a pattern of criminal activity and through the collection of unlawful debts, acquired and maintained, directly or indirectly, interest in or control of B.N. and the AUCTION.
61. In violation of section 772.103(3), Florida Statutes, RIVERS has associated with B.N. and the AUCTION to conduct or participate, directly or indirectly, in such enterprises through a pattern of criminal activity and the collection of unlawful debts.
63. In violation of section 772.103(4), Florida Statutes, RIVERS and MORAN have conspired and endeavored to violate sections 772.103(1), (2), and (3), Florida Statutes (R. 208-09).
Section 772.103(3) makes it unlawful for anyone
Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.
In this ease, the allegation is that B.N. Enterprises charged criminal usury, thereby rendering the loans unlawful.
Rivers moved for summary judgment on the grounds that she was only an employee of B.N. Enterprises with cheek-writing authority. She contended that she had no official title and that she “had done no more as an employee of B.N. Enterprises regarding the floorplan financing unit than Marjorie A. LaVornia did when she ran the floorplan unit at the Orange County Auto Auction.”
Rivers thus acknowledged that she was involved in running the floorplan operation but denied that she actually made loans or set interest rates. Her “Nuremberg defense” seems to be that she merely ran the business pursuant to policy set by others and took only those actions as instructed by superiors. She does not deny receiving, depositing or disbursing proceeds received from usurious loans.
In Reves v. Ernst & Young, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), the United States Supreme Court held that while the accused must have some part in operating or managing the enterprise, it is not necessary for the accused to have control. RICO liability is not limited to those with titles or policy making authority. It extends also to lower-rung management personnel who follow the orders of upper management.
In our case, Rivers admits to having some role in “running” the company. She, therefore, has not met her burden of showing that there is no issue of material fact as to the extent of her activities or that she is entitled to judgment as a matter of law. The summary judgment should not have been entered.
REVERSED and REMANDED for further action consistent with this opinion.
COBB and ANTOON, JJ., concur.